UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:00-CR-28-TS |
| | ) | |
| JAY ZAMBRANA | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Jay Zambrana's Motion for Judgment of Acquittal or In the Alternative for a New Trial [DE 1366], filed on October 12, 2004. The government responded on January 7, 2005, and the Defendant filed his reply on February 28, 2005. For the reasons set forth below, the Court DENIES the Defendant's Motion.

**BACKGROUND**

On November 20, 2003, after a sixteen day trial, a jury found Defendant Zambrana guilty of the following charges contained in the government's Fourth Superceding Indictment: one count of drug conspiracy, in violation of 21 U.S.C. § 846; one count of maintaining a place for the purpose of distributing controlled substances, in violation of 21 U.S.C. § 856(a)(1); eleven counts of drug trafficking, in violation of 21 U.S.C. § 841(a)(1); four counts of using a communication facility in connection with a drug trafficking offense, in violation of 21 U.S.C. § 843(b); one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); two counts of extortion under color of official right, in violation of 21 U.S.C. § 1951; four counts of causing the death of another in relationship to a drug trafficking offense, in violation of 21 U.S.C. § 848(e)(1)(A); one count of money laundering conspiracy, in violation of 19 U.S.C. § 1956(h); two counts of money laundering, in violation of 18 U.S.C. § 1956; and two counts of money laundering, in violation of

18 U.S.C. § 1957. Jay Zambrana was also named in a drug forfeiture allegation pursuant to 21 U.S.C. § 853 and a money laundering forfeiture allegation pursuant to 18 U.S.C. § 982. The jury found that several properties should be forfeited and also determined that a $6,000,000 money judgement was warranted.

## ANALYSIS

The Defendant's Motion alleges that he should be acquitted on some or all counts or in the alternative be granted a new trial based on alleged errors at trial. The Defendant's contentions can be grouped into the following categories: (I) the evidence presented at trial was not sufficient to sustain the jury's verdict on any of the counts; (II) the evidence presented at trial was not sufficient to sustain the jury's verdict on the four homicide counts; (III) the Court erred by denying the Defendant's motion to sever the homicide counts; and (IV) the Court made several errors that require a new trial. The government maintains the Defendant's motion should be denied based on the fact that his arguments are not supported by any new caselaw or facts that were not considered in the pretrial motions, at the trial, or both.

**A.     Standards of Review**

Under Federal Rule of Criminal Procedure 29, a court may acquit a defendant of "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a motion for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court determine

2

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

*United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989); *see also United States v. Bond*, 231 F.3d 1075, 1076 (7th Cir. 2000). In short, the court views all the evidence in the government's favor and is absolutely barred from second-guessing the jury's credibility determinations or findings of fact. *Reed*, 875 F.2d at 111. Instead, the court merely assesses the record to determine if all the admissible evidence supports the defendant's adjudication of guilt beyond a reasonable doubt. *Id.*

Federal Rule of Criminal Procedure 33 permits a court to order a new trial "in the interests of justice." Unlike a motion for acquittal under Rule 29, in ruling on a motion for a new trial under Rule 33, the court is not required to view the evidence in a light most favorable to the government. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999); 58 Am. Jur. 2d New Trial § 391 (2001). However, despite the more lenient standard, Rule 33 motions are nevertheless disfavored and courts generally should only grant them in "the most extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). The trial court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Reed*, 875 F.2d at 113. The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and a guilty verdict would result in a "miscarriage of justice." *Washington*, 184 F.3d at 657.

It is the movant's responsibility to develop his arguments and present the court with adequate grounds and authority to grant the requested relief. The Seventh Circuit has held,

> "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional

3

>   issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991); *see also* Fed. R. App. P. 28(a)(4); *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988). This is true even in the criminal context. *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986).

*United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). This Court will not shy from summarily dismissing allegations of error where a party has presented perfunctory and undeveloped arguments unsupported by pertinent authority.

### B.    Motion for Judgment of Acquittal

First, the Court will analyze the Defendant's challenges to the sufficiency of the evidence to determine whether under Rule 29, the evidence was sufficient to sustain the jury's verdict. The Defendant states without elaboration or argument that the government failed to prove each element of the charges brought against him beyond a reasonable doubt. He claims that the evidence produced at trial was insufficient to prove his guilt beyond a reasonable doubt, and therefore the Court must grant his motion for acquittal. The government, in response, states that there was overwhelming evidence that Defendant Zambrana was not only a member but the leader of a drug conspiracy and that the evidence presented at trial showed that he either personally conducted, directed, or assisted in the crimes for which he was convicted.

Over the course of the sixteen day trial, the government presented a mountain of evidence that included the testimony of surveillance officers, cooperating defendants, cooperating individuals, voluminous business records, audio tapes, and video tapes that connected the Defendant to each and every count contained in the Fourth Superceding Indictment. The Defendant's conclusory allegations that the government's evidence was insufficient to support the jury's guilty verdicts fails

4

to meet the "very heavy burden" for a Rule 29 motion. *United States v. Muskovsky*, 863 F.2d 1319, 1322 (7th Cir. 1988). The Defendant cannot meet that burden by merely listing allegations. For the reasons stated here and in the Court's oral ruling on the Defendant's previous motion for acquittal, the Defendant's motion for acquittal on all counts is denied.

The Defendant separately moves for acquittal on the homicide counts. He argues that there were "many significant inconsistencies" in the testimony of government witnesses Ripoll, Arreola, and Clinton and that there was a "lack of any physical evidence" linking him to the homicides. He concludes that there was "no competent evidence" that could lead a jury to find him guilty beyond a reasonable doubt on the four homicide counts. The government offers the same response here as to the Defendant's movement for acquittal on all counts: the jury is due great deference and there was more than sufficient evidence to support the jury's verdict.

The Defendant's heavy burden in the judgment of acquittal context—in which a verdict will be affirmed if *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt—"becomes even heavier" where he is attempting to show insufficient evidence based on the unreliability of witnesses. *Muskovsky,* 863 F.2d at 1322. This "heavier" burden stems from the axiom that, "absent exceptional circumstances, issues of witness credibility are to be decided by the jury, not the trial judge." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989); *see also Muskovsky*, 863 F.2d at 1322.

An "extremely narrow" exception to this general rule permits the trial judge to make credibility determinations where a witness' testimony "contradicts indisputable physical facts or laws," where, in other words, the witness' story is impossible "in the sense that it would violate immutable laws of nature." *Kuzniar*, 881 F.2d at 470–71. Mere inconsistencies in a witness's

5

testimony do not render that testimony "legally incredible." *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir. 1989).

The Defendant does not support his allegation against the government's case and its witnesses with any citation to the trial record or indeed to any example of an allegedly incredible or inconsistent statement. The Defendant does not suggest that the testimony offered against him violates the "immutable laws of nature" and he cites no examples of indisputable physical facts or laws that were contradicted by the government's witnesses' testimony.

Credibility evaluations are the province of the jury. That the jury chose to believe government witnesses Ripoll, Arreola, and Clinton's testimony, even if their testimony was perhaps inconsistent in some regards, is not one of the "exceptional circumstances" in which the Court may superimpose its own credibility determination over the jury's. Likewise, the testimony of the government's witnesses as to the homicide counts cannot be termed legally incredible. *See United States v. Grandinetti,* 891 F.2d 1302, 1307 (7th Cir. 1989) (a judgment of acquittal "is not required because the government's case includes testimony by 'an array of scoundrels, liars and brigands'" (citations omitted)). Accordingly, the Court denies the Defendant's motion for acquittal on the homicide counts on the basis of insufficient evidence.

Lastly, Defendant Zambrana argues that the Court should grant acquittal on the homicide counts or order a new trial because of the prejudice he suffered when the Court denied his motion to sever the homicide charges. The Defendant's Motion does not make any argument in support of this contention, but in his Reply, the Defendant adds that there is "no question" that there was much stronger evidence in support of the drug delivery counts than the homicide counts and that this

6

disparity warranted a severance. Additionally, the Defendant states that the Court's denial of his motion for severance denied him the opportunity to take the stand to testify as to the homicide allegations. The Defendant claims that he could have presented an alibi defense showing that he was at the gambling boats.

Defendant Zambrana filed a motion to sever the homicide charges from all remaining charges on May 19, 2003. After the government responded, the Court issued an order denying the Defendant's motion on May 23, 2003. The Court found that the homicide charges were properly joined under Rule of Criminal Procedure 8(a) and that Defendant Zambrana had failed to make the necessary showing of "actual prejudice" under Rule 14 to warrant severance. The Court noted that a defendant must assert more than mere general assertions to establish prejudice. However, it noted that Defendant Zambrana had "offered nothing more than general assertions and has failed to demonstrate the requisite showing of prejudice to necessitate severance and overcome the presumption in favor of trying properly joined counts at the same trial."

The Defendant's post-trial Motion adds nothing to the vague and unsubstantiated allegations of prejudice that he lodged in his 2003 Motion to Sever. For the reasons stated in the Court's May 23, 2003, Order, the Defendant's motion for acquittal or a new trial based on the Court's denial of his motion to sever is denied.

C.  **Motion for a New Trial**

Having determined that Defendant Zambrana is not entitled to acquittal, the Court now examines whether, under Rule 33, letting the guilty verdict stand would result in a "miscarriage of justice." *Washington*, 184 F.3d at 657. The Defendant claims that he is entitled to a new trial because

7

of numerous errors committed before and during his trial. His Motion includes a six-page list of abuses, listed A through T, in outline form.

**(1)**   *Alleged Errors in Pretrial Motions*

Item A complains that the Court erred by denying twenty-three separate pretrial motions. In response, the government states that the Defendant's pretrial motions were thoroughly briefed by the Parties and the Court even heard additional arguments on some of these issues at trial. The government contends that the Court's rulings on these motions were based on the applicable facts and caselaw and appropriately decided by the Court. The Defendant does not object to this characterization in his Reply.

The Defendant has not presented any argument as to how the Court erred in any of its rulings on his pretrial motions. Accordingly, the Court affirms its rulings denying the Defendant's pretrial motions. Not only has the Defendant failed to argue why these rulings were in error, he has also declined to offer any case showing how the failure to order a new trial on this basis would result in a miscarriage of justice. The Defendant's motion for a new trial because the Court erred in denying his pretrial motions is therefore denied.

**(2)**   *Arguments Unanswered in the Defendant's Reply*

The government's Response addressed each of the Defendant's remaining allegations of error, listed B through T. In reply, the Defendant only addressed the following allegations from his Motion: B1, B2, B3, D, E, G, I, L, N, and O. Because the Defendant presented no arguments in favor of allegations B through T in his Motion, because the government has addressed each of these

8

contentions in its Response, and because the Defendant responded to only some of the government's statements in his Reply, the Court denies the Defendant's motion for a new trial as to those allegations in B through T that are not addressed in the Defendant's Reply. The Court will address individually those points raised in the Defendant's Reply.

**(3)** *Carlos Ripoll's Testimony*

The Defendant states that the government erred in denying his motion to strike Carlos Ripoll's testimony because he did not have the opportunity to cross-examine Ripoll regarding his involvement in a homicide not charged in the Indictment. In response, the government notes that Ripoll had the right under the Fifth Amendment to refuse to answer the Defendant's questions on cross-examination. Additionally, the government argues that the Court's ruling was proper, since testimony should not be stricken when the witness refuses to testify only about credibility matters that are collateral to the case. In Reply, the Defendant denies that the matter to which Ripoll refused to testify was a collateral issue: "The fact that Ripoll was committing murders and drug rip-offs without the Defendant was not collateral and clearly part of the Defendant's theory that Ripoll and other cooperating Defendants were part of a separate conspiracy."

The Defendant's Reply does no more than repeat arguments that the Court heard and rejected at trial. The Defendant presents no caselaw to support his contention that the Court erred by denying his motion to strike Carlos Ripoll's testimony. The Court therefore denies the Defendant's motion for a new trial on this ground and affirms its denial of the Defendant's motion to strike Ripoll's testimony for reasons articulated in the Court's trial record.

9

**(4)**     *Limitation on Cross Examination of Government Witnesses*

The Defendant contends that the Court erred and denied him a fair trial when it granted the government's motion in limine and limited the Defendant's cross-examination of the government's witnesses regarding their bias or interest. The government argues that the Court acted properly in limiting the Defendant's cross examination. In reply, the Defendant claims that he was deprived of his rights under the Sixth Amendment when the Court granted the government's motion in limine and prevented him from inquiring into the parameters of the government's witnesses' plea agreements, citing *United States v. Schoneberg*, 388 F.3d 1275 (9th Cir. 2004).

The Defendant's argument in his original Motion ostensibly refers to the Court's Order granting the government's second motion in limine, entered on October 17, 2003, as Docket Entry 1174. The Defendant's Reply, however, jettisons this tact and instead refers to a separate order entered that same day as Docket Entry 1176. This latter Order prohibited the Defendant from questioning the cooperating witnesses about the maximum or minimum potential penalties contained in their plea agreements. The Court held that the Defendant would have "ample opportunity to expose the witnesses' potential biases and motives in testifying without delving into specific sentences."

The Defendant's Motion does not acknowledge, let alone argue against, the Court's Order, Docket Entry 1176, which cited binding precedent supporting the limitation of such cross-examination. Seventh Circuit law states that a court does not violate a defendant's Sixth Amendment rights nor abuse its discretion when it prohibits a defendant from questioning government witnesses in detail about the specific sentences and sentence guideline ranges they faced before and after cooperating with the government. *See United States v. Arocho*, 305 F.3d 627, 636 (7th Cir. 2002).

Because the Defendant has not given this Court any reason to doubt the correctness of its earlier holding, his motion for a new trial on this ground is denied.

**(5)** *Agent Balbo's Testimony*

The Defendant next contends that the Court erred in allowing government witness Vincent Balbo to testify regarding the alleged conspiracy. The Defendant complains that the Court improperly allowed Balbo to testify at length, in a narrative fashion, which included hearsay statements. The government states that Agent Balbo was the lead case agent responsible for investigating Defendant Zambrana's drug trafficking organization and that his testimony was based on his own observations and actions, not hearsay. The Defendant's Reply dedicates only three sentences to this claim, stating that Agent Balbo "routinely made subjective conclusions" regarding the Defendant's drug trafficking organization and "continually testified about specific transactions that he did not personally witness."

These sweeping and general accusations, unsubstantiated by any citation to the Record, are insufficient to meet the Defendant's burden on a motion for a new trial. The Defendant has not presented the Court with any reason to doubt its earlier written and oral rulings on this matter and the Defendant's motion for a new trial on this ground is denied.

**(6)** *Offer of Proof Regarding Johnny Zambrana*

The Defendant argues that the Court erred by denying the Defendant's request to make an offer of proof by calling his brother, Johnny Zambrana, in an effort to elicit testimony concerning a potential conflict with Judge Springmann.

11

During a pretrial conference on October 10, 2003, the Defendant suggested that the Honorable Theresa L. Springmann might have a conflict of interest that would prevent her from presiding over his trial: he had reason to believe that Judge Springmann had represented a co-defendant of Defendant Zambrana's brother John Zambrana while she was in private practice. The Court requested more information about this potential conflict and asked the Parties to investigate further. The Defendant failed to uncover any information to substantiate the alleged conflict and the case proceeded to trial.

After the trial but before the forfeiture stage, the Defendant's attorney stated that he wanted to call John Zambrana during deliberations to make further inquiry on the Record regarding this issue. The government objected and the Court denied the Defendant's request to call John Zambrana because it was not a timely request.

The government's Response points out that the Defendant has yet to make any type of initial showing of any conflict, let alone shown how the denial of this request prejudiced the outcome of this matter. The Defendant's Reply makes no legal argument, but again summarily asserts that the Court erred. The Defendant has failed to show either that the Court made any error or that any error resulted in a miscarriage of justice. The Defendant has not met his burden and his motion for a new trial on this basis is denied.

**(7)**   ***Testimony Regarding Tony Clinton***

The Defendant alleges that the Court erred when it allowed the government to play for the jury a recorded conversation in which Defendant Zambrana talks about Tony Clinton "messing up" and how others had to "clean up Tony's messes" as well as other statements about unrelated violent

12

acts.

The government strains to respond to the Defendant's vague assertions of error. Although the Defendant sought, and the Court granted, several continuances so that he could have the trial transcript with which to prepare his Motion, the Defendant does not cite to the transcript and identify the source of his objection. Indeed, the Defendant never cites to the Record, either in his Motion or in his Reply. Nonetheless, the government states that the violent acts that Tony Clinton testified to were all acts in furtherance of the drug conspiracy and therefore intrinsic to the charged conduct. The government claims that these acts occurred during the charged conspiracy and were done to further the ends of the conspiracy, and therefore admissible. The Defendant adds nothing of substance in his four sentence reply on this issue.

The government correctly states that evidence of other acts or crimes that are intricately related to the facts of the case are admissible without reference to Federal Rule of Evidence 404(b) so long as the probative value of the evidence outweighs its prejudicial impact. *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir. 1987). The Defendant has not presented the Court with any reason to doubt the correctness of its earlier ruling, let alone evidence that the Court's ruling resulted in a miscarriage of justice. Accordingly, the Defendant's motion for a new trial on this ground is denied.


**(8)** *Admission of Autopsy Photographs*

The Defendant argues that the Court erred by denying his objection under Federal Rule of Evidence 403 to Government's Exhibits 318–24 (autopsy photographs), which he deems "highly prejudicial." The Court deemed these photographs admissible at trial, thought it had previously

13

granted the Defendant's motion in limine and precluded the government from submitting photographs of the murder victims into evidence.

The government cites numerous cases to the effect that such photographs are admissible where they have probative value to help explain the government's account of the crime. The Defendant cedes that the government has cited valid caselaw, but argues that the autopsy photographs in this case did not show the identity of the victim, the manner of death, the murder weapon, or any other element of the crime, or corroborate the testimony of any witnesses. Rather, they had no purpose here but to inflame the passions of the jury and distract them from the issues that they could fairly consider.

The Defendant's Motion and Reply add nothing to objections made against this evidence's admission at trial. Accordingly, the Court affirms its earlier oral ruling admitting the autopsy photographs and denies the Defendant's motion for a new trial on this ground.

**(9)**     *Presence of Government Witnesses at Table*

The Defendant contends that the Court erred by allowing several government witnesses to sit at counsel table, thereby heightening their credibility in the eyes of the jury, and then allowing those same witnesses to testify. The Defendant claims that these errors were compounded when those same witnesses had improper interactions with jury members during the trial when they helped dispense audio equipment headsets to the jury.

Over the Defendant's objection, the Court permitted some government agents to sit at the government's table to assist the prosecutors with its trial presentation. As the government notes, this is an allowable exception to a separation of witness order. An investigative agent for the government

14

may sit at the government counsel's table even though he is also a witness. *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989). The Defendant has not presented the Court with any argument why this caselaw should not apply and therefore his motion for a new trial on this ground is denied.

The government acknowledges that one of its agents started to help the Marshals distribute headphones to the jury. However, when the Court noticed this, it warned the government and the agents had no further contact with the jury. The Defendant does not dispute the government's claim that the government agents did not communicate, either verbally or non-verbally, with the jurors. This encounter did not prejudice the Defendant and is not grounds for a new trial.

**(10)** *Improper signals to Dr. Halldorson from Government Witnesses*

The Defendant claims that he was prejudiced when government agents gave improper signals to its witnesses when they were on the stand. Although he insinuates that the government signaled several of its witnesses, the Defendant actually only refers to Dr. Marvin Halldorson's testimony. Dr. Halldorson, a statistics expert, testified regarding summaries he prepared based upon his analysis of voluminous records relating to the Defendant's gambling history and alleged winnings.

The government states that at trial, the Defendant protested that one of the government agents was making some nodding motions during Dr. Halldorson's testimony. The Court at this time admonished the government and any motions or expressions from the government agents ceased. The government contends, and the Defendant does not state otherwise, that such actions were unintentional and had no impact on the witness's testimony.

The Defendant concedes through his silence that any actions made by the government's agents had no affect on Dr. Halldorson's testimony. Furthermore, he gives this Court no reason to

15

doubt that it handled this situation adequately at trial. Accordingly, his motion for a new trial on this basis is denied.

**(11)** *Objections to the Jury Venire*

The Defendant complains that he is entitled to a new jury because there were no Hispanics in the jury pool. The Defendant cites to Ninth Circuit caselaw, *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004), in support of his claim that he has made a prima facie showing of a low representation of Hispanics and therefore it is the government's burden to show that this was done by happenstance or an otherwise fair jury selection process. The government claims that the Defendant has not presented any evidence, at trial or in his Motion, that suggests any problems with the jury selection process.

While the Defendant cites only to Ninth Circuit law, it is of course only Seventh Circuit law that binds this Court. According to the Seventh Circuit,

> While juries must be taken from a source that is representative of the community, *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975), the Constitution does not require this to ensure representative juries, but rather impartial juries. *Holland v. Illinois*, 493 U.S. 474, 480 (1990).
> To establish a prima facie case that their Sixth Amendment rights to a venire drawn from a fair cross-section of the community were violated, the defendants must show that the group allegedly excluded is a distinctive part of the community; that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). If the defendants establish these elements, the government must show that those aspects of the jury selection process that result in the disproportionate exclusion of a distinctive group manifestly advance an overriding, significant government interest. *Id.*, 439 U.S. at 367–68; *United States v. Guy*, 924 F.2d 702, 705 (7th Cir. 1991).

*United States v. Ashley*, 54 F.3d 311, 313 (7th Cir. 1995).

16

Although the Defendant avoids Seventh Circuit law and cites to the Ninth Circuit instead, his claim still fails under its own proffered citation. *Randolph* cites favorably an earlier Ninth Circuit case that held that an absolute disparity of 7.7 % between a group's presence in a district and that same population's representation in a jury venire in a murder prosecution was insufficient to satisfy the second prong of the aforementioned test from *Duren*. *Randolph*, 380 F.3d at 1140 (citing *United States v. Suttiswad*, 696 F.2d 645, 649 (9th Cir. 1982)). In this case, the Defendant states that Hispanics constitute about 4.2% of the Allen County Population. Even if this number did represent the Hispanic population of the Fort Wayne Division, and not just Allen County, the Plaintiff has still failed to make out a prima facie case of systematic exclusion.

In the Seventh Circuit, the Defendant fares no better. In this circuit, "a discrepancy of less than ten percent alone is not enough to demonstrate unfair or unreasonable representation of [a minority group] on the venire." *Ashley*, 54 F.3d at 314 (citing *United States v. McAnderson*, 914 F.2d 934, 941 (7th Cir. 1990)). Because the Defendant has failed to establish a prima facie case showing a low representation of Hispanics, under Seventh Circuit or even under Ninth Circuit law, his motion for a new trial based on the jury venire is denied.

**(12)** ***Jury's Request for Trial Transcripts***

Finally, the Defendant argues that he is entitled to a new trial because the Court misled the jury by telling them that they would be provided certain requested transcripts and then later informed the jury that these transcripts would not be available until a later date. According to the government's account, during jury deliberation, the foreperson asked the Court for certain transcripts. The Court advised the jury that these transcripts were not prepared. The Court instructed

17

the jury to continue deliberating and promised to notify them when the court reporter had completed the requested transcripts. The jury reached a unanimous verdict and found the Defendant guilty on all counts before receiving the transcripts.

The Defendant cites no rule or caselaw and makes no reference to the trial transcript in support of his claim that the Court misled the jury and that this error is grounds for a new trial. He only summarily concludes that the jury inappropriately reached a verdict without fully considering the evidence when they reached a unanimous verdict before they received their requested transcripts.

The Defendant is incorrect to conclude that the jury could not have reached a valid verdict before they received the requested transcripts. On the contrary, the jury's verdict represents its conclusion that it had determined that the Defendants were guilty of each element of each count against them beyond a reasonable doubt even without a trial transcript. The jurors were entitled to rely instead on their recollections of the trial testimony and reference any notes they may have taken. The Defendant's argument has no basis in logic or in law and the Court therefore denies his motion for a new trial based on the trial transcripts issue.

## CONCLUSION

For the reasons stated, the Court DENIES Defendant Zambrana's Motion for Judgment of Acquittal or In the Alternative for a New Trial [DE 1366].

SO ORDERED on July 26, 2005.

           S/ Theresa L. Springmann
           THERESA L. SPRINGMANN
           UNITED STATES DISTRICT COURT