UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:00-CR-28-TS |
| | ) | |
| JAY ZAMBRANA | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Second Motion for a New Trial, filed on December 30, 2005. The Court heard argument and testimony on the Motion March 22–23, 2006, and denied the Motion on March 23, stating a written opinion would follow.

Evidence was disclosed by the government in a letter dated November 28, 2005, that prior to the Defendant's trial, a witness in the case, Denny Arreola, was housed at Hammond City Jail and was given special treatment. Also, there is evidence that, while housed at the Metropolitan Correctional Center (MCC) in Chicago, Arreola was discovered to have a cell phone. The Defendant argues the conduct of the Hammond City Jail is attributable to the government, the government was aware of Arreola's misconduct at Hammond and the MCC, and that the government committed a *Brady* violation by suppressing these facts. The Defendant argues that another co-defendant, Alvestia McKeller was allowed to use drugs while at Hammond Jail and that he gave false testimony regarding his drug use. Finally, the Defendant argues that the Defendant's co-defendants had numerous opportunities to plan their testimony prior to the trial. The Court finds no new trial is necessary.

**A.    *Brady* Standard**

The Defendant has the burden to show the government violated *Brady* and that a new trial

is necessary. *United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001). A *Brady* violation exists when the evidence at issue is 1) favorable to the defendant; 2) suppressed; and 3) material to the defense. *Id.* at 832 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Impeachment evidence as well as exculpatory evidence falls within this rule." *United States v. Souffront*, 338 F.3d 809, 819 (7th Cir. 2003) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Evidence is not suppressed unless the government prosecutors or an agency or branch that takes part in investigating or prosecuting the matter has knowledge of the evidence. *Id.*; *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (stating that there is no "duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue"). The test for materiality is whether in the absence of the suppressed evidence the Defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A verdict is not worthy of confidence if there is a "reasonable probability" the admission of the suppressed evidence would have resulted in a different verdict. *Id.* "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.*

B.   **Arreola's Conduct at the MCC**

At the March 23 hearing, Vincent Balbo, one of the investigating officers, testified that he was aware that Arreola had been caught with a cell phone while at the MCC in Chicago. Arreola cooperated with the investigation of the MCC and received a sentence reduction in return. The Defendant obtained no information regarding what numbers or persons Arreola contacted while at the MCC. The government's failure to inform the Defendant of Arreola's cell phone use is not a

*Brady* violation because having this evidence would not have made a different result reasonably probable.

There is no evidence Arreola obtained the cell phone from the government or was allowed to use it as a special privilege. Insufficient supervision by jail staff appears to be the reason Arreola was able to obtain and use a cell phone. If the Defendant hoped to portray Arreola as a shady character because he violated MCC rules, this would have been redundant to all of Arreola's other bad acts of which the jury was aware. The jury knew that Arreola was involved in drug trafficking and homicide along with the Defendant. That he cooperated in the internal investigation at the MCC may have helped him in the eyes of the jury. Arreola's violation of MCC rules by obtaining a telephone would have made little difference in this respect.

C.   **Conversations Among Co-Defendants**

The Defendant argues that Arreola's cell phone possession bolsters the Defendant's argument that Arreola and other co-defendants, including Tony Clinton and Carlos Ripoll, set up the Defendant for the homicide charge. The Defendant argued and presented evidence at the hearing that Arreola, Clinton, and Ripoll had opportunities to discuss their testimony prior to trial and that these discussions were not made known to the Defendant. However, there is no evidence that the government knew that any conversation between Arreola, Clinton, and Ripoll took place other than what was disclosed.

The Defendant's evidence that these other conversations took place is not convincing. There is no evidence Arreola used his cell phone to talk to anybody related to the case. Arreola said that he used his phone privileges to talk to his family and girlfriends. At most, the Defendant has shown

3

the possibility that Arreola might have used his cell phone to talk to unknown persons about the case.

Unrelated to the cell phone, evidence of other conversations was presented. Trinidad Cruz testified that he was in a van with Arreola, Clinton, and McKeller, and that they discussed their testimony against the Defendant. However Clinton and Arreola dispute this and Marshals were in the van during this alleged conversation. The Court does not find Cruz's testimony to be credible. Cruz is a jailhouse acquaintance of the Defendant and there is little evidence supporting his testimony. Jesse Colon testified that Arreola told him that he had talked to his co-defendants and they all agreed to testify against the Defendant. However, Colon was a witness for the Defendant at trial and could have testified about this conversation then. That his testimony was not brought up until now detracts from his credibility. Also, all of the alleged, undisclosed conversations between Arreola, Clinton, and Ripoll, were denied by them, or stated to have not involved any of the specific facts of the case.

At most, the Defendant has shown several opportunities for the co-defendants to talk to each other, such as when they were housed near each other at the MCC or the medical unit at the Lake County Jail. However, the proximity of the co-defendants to each other does not appear to have been kept a secret from the Defendant and could have been inquired into at trial. Also, that Arreola, Clinton, and Ripoll might have had opportunities to talk to each other about cooperating against the Defendant would not have made a different outcome reasonably probable. The jury already knew Arreola, Clinton, and Ripoll were cooperating with the government against the Defendant and had received benefits for doing so. The jury knew they had a motive to lie, that is, by testifying against the Defendant for the homicide, homicide charges were not brought against them. That they might

4

have had an opportunity to talk to each other before trial adds little, if anything, to what the jury already knew about the co-defendants' possible motivations to testify untruthfully.

### D.     Arreola's Conduct at Hammond Jail

Arreola testified about the many benefits he received while at Hammond Jail before the trial. He became a "trustee," or a prisoner who helps fix and clean things and is given extra privileges. He had access to phones. He was able to obtain marijuana and Xanax. He had sex with female visitors. He was able to smoke and receive pizza deliveries outside of the jail building. There was no evidence offered that any investigation or prosecution agency involved in this case knew of the violations taking place at the Hammond City Jail until well after the trial was over. Nor was there any evidence that Hammond City Jail took any role in investigating or prosecuting the Defendant. Hammond City Jail was contracted to house Arreola and other defendants, and that was the extent of the Jail's involvement in the case. These benefits were not all allowed by the jail, but were obtained by Arreola by abusing his trustee position and lax or corrupt jail supervision. The Defendant argues the prosecution should have known of Arreola's special treatment because they knew he was able to obtain a cell phone at the MCC. However, the Court does not believe that because jail supervision was lax or corrupt at one jail, and a prisoner is moved to a new jail, that the government should know that the prisoner will be able to obtain improper benefits at the second jail as well.

Also, the Court is not convinced the evidence regarding Arreola's special treatment at Hammond Jail would be material under *Brady*, could it be shown that the government suppressed the evidence. Even if the government knew of Arreola's Hammond Jail misconduct, there is no

5

evidence they were the source of it. Arreola credibly testified that his special treatment was related to his desire to make his jail stay more pleasurable and his abuse of his role as a trustee, and that it had nothing to do with his cooperation with the government. Also, Arreola was already subject to hours of cross-examination. The jury heard that Arreola was testifying in return for a plea agreement wherein the government agreed not to proceed against Arreola for his involvement in the homicide. The additional impeachment value of Arreola's jail conduct is slight taken in the context of Arreola's plea agreement and the other credibility problems already raised by the Defendant. Arreola had already been "so thoroughly impeached that additional impeachment evidence would have made no difference." *Wilson*, 237 F.3d at 833.

The Defendant cites *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995), in support of his argument. *Boyd* is easily distinguished. In that case, the Seventh Circuit upheld a district court judge's use of his discretion to grant a new trial where the prosecutors gave beneficial treatment to cooperating witnesses, and the prosecutors did not inform the defendants of that treatment. Also, the *Boyd* prosecutors knowingly used false testimony. There is no evidence the prosecution in this case knew of any of the benefits given Arreola at Hammond Jail or knowingly used false testimony. The Defendant rightly argues that *Boyd* was not concerned with punishing the prosecutors for bad behavior, but focused on whether disclosure of the bad behavior would have made a difference at trial. In *Boyd*, there appeared to be a quid pro quo, in that the prosecutors gave the co-defendants benefits in the form of access to women and drugs in return for testimony at trial. The impeachment value of the misconduct in *Boyd* was substantial. Here, the prosecutors did not know of the Hammond Jail violations, and were not the source of any of Arreola's benefits. The impeachment value of Arreola's misconduct is much less, and in the Court's view, would have not made any

6

difference in the result of the case.

### E. Alvestia McKeller's Testimony

The Defendant claims the government used false testimony when Alvestia McKeller testified at trial that he did not use drugs during incarceration because McKeller actually did use drugs during this time. There is no evidence of McKeller's drug use other than Arreola's testimony that he heard from others that McKeller did. Arreola did not see it himself. Even if McKeller did lie about his drug use, there is no evidence the government knew of this. Also, if it is true that McKeller lied about using drugs while in jail, had the Defendant known of this, the additional impact of the Defendant's impeachment would have been slight. McKeller, like Arreola, had been thoroughly impeached on the benefits of his plea agreement and past criminal doings. McKeller's testimony at trial was also substantially corroborated by other evidence, including video, wire, and phone recordings.

### F. Newly Discovered Evidence

There being no *Brady* violation, the evidence regarding Arreola's special treatment, cell phone usage, or possible contact with other co-defendants does not warrant a new trial as newly discovered evidence. Generally, newly discovered impeachment evidence does not warrant a new trial, unless the "conviction was [] premised on the demonstrably dubious testimony of a single witness." *United States v. DePriest*, 6 F.3d 1201, 1217 (7th Cir. 1993). In this case, the testimony of three co-defendants and evidence of phone calls connected the Defendant to the homicides. Also, none of the new evidence presented has convinced the Court that any of the co-defendants' testimony is demonstrably dubious.

For these reasons, the Defendant's motion for a new trial [DE 1476] is DENIED.

SO ORDERED on March 30, 2006.

                                            /s/ Theresa L. Springmann
                                           THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT